## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

|  |  |  |
|---|---|---|
| BANCINSURE, INC., and Oklahoma Corporation, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 12-cv-2110-KHV-GLR |
| CARL L. McCAFFREE, et. al, | ) ) | |
| Defendants, | ) ) | |
| and | ) ) | |
| FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver of The Columbian Bank and Trust Company, | ) ) ) | |
| Defendant. | ) ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

The Court has before it FDIC-R's Motion to Compel (ECF 136). Invoking Fed. R. Civ. P. 37 and D. Kan. Rule 37.2, Co-Defendant Federal Deposit Insurance Corporation as Receiver of The Columbian Bank and Trust Company (FDIC-R) seeks to compel Plaintiff to produce documents responsive to its Document Requests Nos. 19 and 22. Plaintiff opposes the motion.

The parties have also filed two motions incidental to the motion to compel: BancInsure, Inc.'s Motion for Leave to File Supplemental Authority in Response to FDIC-R's Motion to Compel (ECF 187); Federal Deposit Insurance Corporation as Receiver of the Columbian Bank and Trust Company's Motion for Leave to Respond to BancInsure, Inc.'s Motion for Leave to

File Supplemental Authority in Response to FDIC-R's Motion to Compel (ECF 189). The Court

has granted the former motion. Without objection it also grants the latter motion. It thus

considers their respective arguments upon the motion to compel.

Initially the Court notes Fed. R. Civ. P. 1. It directs the Court to construe and administer

the rules ". . . to secure the just, speedy, and inexpensive determination of every action and

proceeding." Subject to this direction, the Court exercises its discretion in ruling on the motion

to compel. For the following reasons it grants the motion as to Request 22 and denies it as to

Request 19.

## I.  DOCUMENT REQUEST NO. 19.

Document Request No. 19 and the response of Plaintiff are as follows:

**Request No. 19**: All documents relating to coverage for claims by the FDIC
as receiver for failed banks against directors and officers of failed banks.

**RESPONSE:** BancInsure objects to this Request for Production as overly
broad in scope, burdensome, vague, and ambiguous. The request as drafted
appears to seek information related to any FDIC claim as a receiver related
to failed banks involving any officers or directors of those failed banks.
It appears to include within its scope FDIC activities not involving BancInsure.
It also appears to include within its scope banks not insured by BancInsure.
To the extent this Request for Production seeks information communicated
or gathered by counsel for BancInsure in connection with the defense of this
or other FDIC claims, BancInsure objects to the production of that information
based on Attorney-Client Privilege and the Work Product Doctrine.

The parties have agreed that Request No. 19 should be narrowed to seek only documents

relating to claims by the FDIC as receiver for banks insured by Plaintiff BancInsure and not as to

failed banks it did not insure. Plaintiff contends the request nevertheless remains overly broad in

scope and burdensome. FDIC-R in turn argues that Plaintiff waived the objection that the

request remains burdensome for the number of hours required to produce the documents. Defendant cites *Johnson v. Kraft Foods North America, Inc.*,[1] to support this argument of waiver. The Court agrees with the holding in *Johnson*, but finds it inapplicable here. The objection to Request 19 contains sufficient detail to withstand the suggestion of waiver. And for the following reasons the Court agrees that the request, although narrowed, remains overly burdensome.

Defendant FDIC-R contends that Request 19 is reasonably calculated to lead to the discovery of documents within the files of Plaintiff for other claims by other insureds, unrelated to the claims of Defendants here. FDIC-R first argues there is a reasonable expectation that Plaintiff has conceded coverage under policy provisions like those in this case. Secondly it argues that such concession(s) to any other policyholder(s) as to other claims would require Plaintiff and the Court to interpret the policy to provide coverage in this case. Thirdly it contends the requested discovery relates to its affirmative defenses of waiver and estoppel.

The initial arguments of Defendant FDIC-R illustrate the classic effort to interpret a contract of insurance so as to create coverage, aside what the policy itself may provide to the contrary. Although our and other courts have sometimes allowed similar discovery, the supporting argument for it, at least as it applies here, appears to be little more than an effort to dance around the parol evidence rule. And against the basic premise that an insurance contract, if unambiguous, is to be construed by the language within its four corners and not by incorporating provisions from other sources. If the policy is ambiguous, on the other hand, the claimant is entitled to coverage. And that holds true not because of some extraneous document containing a

---

[1]236 F.R.D. 535, 541 (D. Kan. 2006).

prior admission of coverage for some other insured. But rather and more simply because Kansas law requires any ambiguity in the policy to be construed in favor of coverage and against the insurer as the party who drafted the contract. The briefing of the parties appears to recognize these basic premises of Kansas insurance law.[2]

The foregoing consideration upon the present motion, of course, addresses relevancy of the requested documents for purposes of discovery. Plaintiff did not object to Request 19, however, on grounds of irrelevancy, or whether it is reasonably calculated to lead to the discovery of relevant evidence. Consequently, it waived that objection. Plaintiff did object upon grounds that the request is overly broad in scope and is burdensome. In determining that objection, the Court will consider to what extent the requested production is likely to provide relevant information so as to justify whatever burden exists to produce it.

At the outset the Court finds little persuasion in the suggestion that documents from files for other claims against other banks would necessarily or even likely help Defendants in this case. Many liability policies, including those issued by the same carrier, may contain identical or similar provisions; and many may not. Insurers often tailor the provisions of a policy to fit both their own requirements, those of the individual policyholder, and those required by statute or the administrative regulations of the state in which the policy is issued. Policies vary not only from policyholder to policyholder and from state to state, but also from year to year. For some insureds, but not all, the insurer may add one or more individual endorsements to a basic policy form. For any given insured the insurer may use one of its standard policy forms and then add

---

[2] *See, e.g., Rhynerson v. Hardy*, 137 P.3d 1094 (TABLE), 2006 WL 1976781, at *3 (Kan. App. July 14, 2006); *Hartford Fire Ins. Co. v. Vita Craft Corp.*, 911 F. Supp. 2d 1164, 1180 (D. Kan. 2012); *Penalosa Co-Op. Exch. v. Farmland Mut. Ins. Co.*, 14 Kan. App. 2d 321, 324 (1990).

other provisions, either by using other standard forms, e.g. endorsements, or with more tailor-made language that addresses the specific needs of the particular policyholder.  This manner of issuing insurance appears to be specifically true of the insurance here at issue, as reflected by the policy attached to the briefing.[3]

Beyond these variations, one cannot assume that any particular claim(s) arising under one policy will either duplicate or involve facts materially similar to those that underlie other claims under other policies issued to other policyholders, whether in Kansas or elsewhere.  Any given claim generally arises, moreover, from circumstances peculiar to that particular claim, not from those that duplicate or replicate other claims.  Exceptions to that generality, of course, may occur. But when a claimant thus asserts a claim under one policy, any expectation is at best random that it will probably bear some reasonably relevant resemblance to some other claim by some other claimant at some other time and under materially similar circumstances.  The Court can hardly assume beyond speculation, therefore, that other claims from other times and places, under other circumstances and involving other policies and claimants, somehow provide a reasonable expectation for producing something useful for the claims in this case.

In its supporting memorandum FDIC-R cites several cases from courts outside Kansas that have authorized production of documents for other insurance claims, such as it seeks here. They lack binding authority for this motion, but the Court also finds them unpersuasive.  *Phillips v. Clark County School District*, for instance, involved production of documents for other claims

---

[3] *See* ECF 159-3, setting out the relevant insurance policy, consisting of eight pages of a printed policy form, followed by 27 pages of apparently typewritten provisions, including eleven specific endorsements.

or lawsuits that involved the same policy provision as the one being litigated.[4]  Similarly the other cases cited by FDIC-R appear to involve requests for documents for claims in which the identical policy provisions are in issue.[5]  By contrast, even as modified by agreement of counsel, Request 19 here contains a far broader request.  It seeks documents for other claims against which Plaintiff had issued liability insurance for directors and officers of failed banks, whether or not the identical policy provisions or even the same policy be involved.  The Court agrees that Request 19, even as modified, asks for documents beyond reasonable expectation that they would provide anything of value for this particular case.

FDIC-R further argues, however, that its requested discovery will likely provide documents from other claims files for other losses by other FDIC-insured banks and that these will support its defenses of waiver and estoppel.  The Court disagrees.  The Pretrial Order indicates these two defenses to be substantially narrower than FDIC-R suggests.[6]  Factual contentions by the individual defendants raise these defenses because of conduct of Plaintiff in this case, not in other litigation.[7]  The separate contentions of FDIC-R then refer to one other case, *Columbian Financial Corporation, et al v. BancInsure, Inc,* 08-CV-2462-CM (D. Kan.).[8]

---

[4]No. 2:10-CV-02068-GMN, 2012 WL 135705 (D. Nev. Jan. 18, 2012).

[5]In footnote 4 of its reply memorandum FDIC-R cites *Brecek & Young Advisors, Inc. v. Lloyd's of London*, No. 09-cv-2516-JAR-GLR, 2010 WL 4340457 (D. Kan. Oct. 27, 2010).  In that case this court did allow the requested discovery, but upon facts substantially different from those here.  It was more restrictive in scope and related only to how the insurer had addressed the specific policy there at issue.  The decision focuses upon the timing of any such discovery. "The parties brief the motion only upon this very narrow issue of whether the requested discovery is premature without a prior ruling that the disputed policy language is ambiguous." *Id*. at *3.  The Court does not consider *Brecek* to be controlling as to the instant case.

[6]ECF 160.

[7]*Id.* at 11.

[8]*Id.* at 14.

The Pretrial Order sets forth the essential elements of the defenses of waiver and estoppel. For waiver they include the following: "(1) Voluntary and intentional relinquishment of a known right; (2) Knowledge of all material facts; (3) Intent to waive; and (4) A willingness to refrain from enforcing those contractual rights."[9] Essential elements of the defense of estoppel include "(2) Individual Defendants rightfully relied and acted upon" a representation made by Plaintiff.[10]

As thus asserted in the Pretrial Order, the defenses of waiver and estoppel appear to be narrower than FDIC-R assumes. Defendants assert them against the conduct by Plaintiff in this case and in one other litigated claim involving Columbian Financial Corporation. But the Court finds nothing persuasive by the argument that the files of Plaintiff for other claims by other claimant banks under their own policies will likely show that BancInsure exercised a "voluntary and intentional relinquishment" of whatever defenses may exist against the claim(s) in this case and thus waived whatever right, if any, it may have to contest them or to rescind this particular policy.

The Court also agrees with the suggestion that waiver and estoppel cannot be used to expand the scope of insurance coverage. A party cannot create insurance by waiver and estoppel, at least under Kansas law.[11] And the Court also finds nothing to support the supposition that Defendants to their detriment "rightfully relied and acted upon" documents from other claim

---

[9]ECF 26, 27.

[10]*Id* at 27.

[11]*Aks v. Southgate Trust Co.*, 844 F. Supp. 650, 659–660 (D. Kan. 1994) (citing several Kansas cases: *Ron Henry Ford, Lincoln, Mercury, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 8 Kan. App. 2d 766, 769, 667 P. 2d 907, 909 (1983); *Hennes Erecting Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.,* 813 F.2d 1074, 1080 (10th Cir. 1987); *Western Food Prods. Co. v. United States Fire Ins. Co.*, 10 Kan. App. 2d 375, 699 P.2d 579, 584 (1985)).

files, so as to support their defense of estoppel. It thus finds it questionable at best that FDIC-R would find items of consequence from its requested discovery.

Inasmuch as Plaintiff did not object on grounds of irrelevancy, however, it must show that the requested discovery is overly broad in scope and burdensome. In support of that objection, it has provided the Declaration of Edward F. Donohue.[12] As a lawyer for Plaintiff BancInsure against other litigation involving its insurance coverage, Donohue has served as national coordinating counsel on claims by the FDIC as Receiver and other successors (such as bankruptcy trustees) after cessation of coverage based on a bank failure. In this capacity he has "developed an understanding of claims and claims materials that might be responsive to FDIC-R's Request No. 19 in the *Columbian Bank* case and the burden that would be involved in responding to that request."[13] The declarant states that 36 BancInsure files exist, including the claim in this case, involving failed banks with BancInsure as their insurer and where FDIC is making or threatening claims against officers and directors of the failed bank. Based upon his experience in handling these files, Donohue estimates "that review and preparation of each file would require somewhere between 36 and 100 hours"[14] or a total of "eight to ten weeks,"[15] in order to respond to the request. This would include segregating and preparing a log for documents subject to a legal privilege.

Based upon the affirmations of Mr. Donohue and including the estimates of time

---

[12]ECF 155-1.

[13]*Id.* at 2.

[14]*Id. at 3.*

[15]*Id.*

involved, the Court finds that Request 19 is overly burdensome and particularly against the speculative possibility that it would lead to anything of consequence for Defendants in this case. And notably, notwithstanding the affirmation by Donohue that other litigation exists with FDIC as receiver, its own reply memorandum upon the instant motion contains nothing to identify any such case with facts sufficiently similar to this one, so as to justify its requested discovery.

In support of its motion Defendant FDIC-R has cited *G.D. v. Monarch Plastic Surgery, P.A.*.[16] That case allowed the discovery there requested, because the plaintiffs had failed to provide sufficient detail or information in terms of time, money and procedure to support their objection of unreasonable hardship.[17] Citing *Employers Comm. Union Ins. Co. of Am. v. Browning-Ferris Indus.*,[18] the Court in *dictum* noted that, "'Discovery should be allowed unless the hardship is unreasonable in light of the benefits to be secured from the discovery.'"[19] In the instant case, for the reasons already set forth, the Court does find that the hardship is unreasonable in light of the benefits, if any, to be secured from the proposed discovery.

As already noted, Fed. R. Civ. P. 1 provides that the rules of civil procedure "should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding." For the foregoing reasons, the Court believes it best serves the purpose and spirit of Rule 1 and the needs of all parties in this case by overruling the motion to compel

---

[16]No. 06-2184-CM, 2007 WL 201150 (D. Kan. Jan. 22, 2007).

[17]*Id.* at *8.

[18]No. 91-2161-JWL, 1993 WL 210012 (D. Kan. April 5, 1993).

[19]*G.D.*, 2007 WL 201150 at *8.

the production sought by Request 19.[20]

## II. DOCUMENT REQUEST NO. 22.

Document Request No. 22 and the response of Plaintiff are as follows:

**Request No. 22**: All Documents relating to any communications with any reinsurer about the claim at issue.

**RESPONSE:** Please see documents Bates Nos. BANC 001079 to BANC 001278 previously produced. Those communications have been redacted to delete information protected by Attorney-Client Privilege or the Work Product Doctrine.

FDIC-R first contends that the redacted parts of the documents do not qualify for the attorney-client privilege or work-product doctrine. It has attached a copy of the privilege log provided by Plaintiff. But it argues that Plaintiff has not provided enough information, whether by log or otherwise, to support the objection to production. After reviewing the log, the declarations of Edward F. Donohue and Donald Roy Pratt, Jr. (Exhibits 155-1 and 155-2), and the briefing of the parties, the Court finds that the privilege and protection apply to the following categories of documents as asserted by the log: Priv. Log No. 7 through 10, 12, 13, and 14.

The Court cannot find that Plaintiff has adequately shown that privilege or work product apply to the categories identified on the log as follows: Priv. Log No. 1, 2 and 3, relating simply to "identifying the costs related to the adjustment & defense of the coverage litigation"; Priv. Log No. 4, 5, and 6, relating to "Status update with attorney evaluation of case" between the claims manager of Plaintiff and an attorney acting only as an adjuster or investigator and not as

---

[20]In addition to the briefing of the parties, the Court has considered both the case of *St. Paul Mercury Ins. Co. v. Miller*, ___ F. Supp. 2d ___, No. 12-CV-0225-RWS, 2013 WL 4482520 (N.D. Ga. Aug. 19, 2013), cited by Plaintiff in its motion for leave to cite supplemental authority (ECF 187), and the opposing argument of Defendant FDIC-R in its motion for leave to respond (ECF 189). For the reasons already stated in this Memorandum and Order, the Court finds the *St. Paul Mercury* decision to be persuasive although not binding authority, in particular as it addresses the discovery issue.

legal counsel to Plaintiff; Priv. Log No. 11, relating only to fee billings; and Priv. Log Nos. 15

through 24, relating only to E-mail exchanges and attachments "regarding setting of reserves."

The Court does not find beyond speculation that discussion of reserves constitutes legal advice or

the request for it, rather than merely sophisticated estimates by claims personnel of possible

dollar amounts of verdicts and litigation expenses.

Fed. R. Civ. P. 26(b)(5)(A), however, places the burden upon the party claiming

privilege or work product to show its applicability. To invoke guesswork, uncertainty, or

speculation does not meet that burden. Obviously the rule does not call for disclosure of the

content of legal advice or work product. But the party objecting to the discovery must describe

the withheld information ". . . in a manner that, without revealing information itself privileged or

protected, will enable other parties to assess the claim."[21] Illustrations possibly applicable to the

instant case might include the following: "discussion of applicable legal theories, so as to set

reserves," or "discussion of admissibility of evidence to help in setting reserves," or "discussion

of specific depositions and their likely costs, relevant to setting reserves." In this instance the log

is simply too abbreviated and devoid of content to meet the simple and easy requirement of

Rule 26 to substantiate the claims of privilege and protection. The Court finds no sufficient

supplemental information in the briefing.

Defendant FDIC-R further contends that, by sharing the allegedly privileged and

protected information with its reinsurer, Plaintiff has lost whatever privilege or protection it may

have had. To the contrary, BancInsure argues that the common interest doctrine applies so as to

avoid any such loss of privilege or protection. It cites *United States Fire Insurance Co. v. Bunge*

---

[21]Fed. R. Civ. P. 26(b)(5)(A)(ii).

*North America, Inc.,* as follows:

> The common interest doctrine, however, affords two parties with a common legal interest a safe harbor in which they can openly share privileged information without risking the wider dissemination of that information.[22]

In *Bunge*, however, the Court did order the production of communications between insurer and its reinsurer. As further noted from *Bunge*, in applying the common interest doctrine between insurer and reinsurer, courts have required that ". . . the nature of the interest be identical, not similar, and be legal, not solely commercial."[23]

As the party asserting the protection of the common interest doctrine, Plaintiff here bears the burden to show it applies. The Court has already noted that liability insurance policies, even if similar, are not necessarily identical or uniform in their relevant provisions. And that also holds true as well for reinsurance, when compared with the underlying liability policy to which it applies.

Insurer and reinsurer obviously share common commercial and financial interests against the underlying claim(s). But a common commercial or financial interest does not mean there is necessarily an identical legal interest. Policy terms, conditions, and exclusions between insurance and reinsurance can be materially different. Reinsurance, for example, may provide coverage strictly limited to only certain types of misconduct and liabilities and thus not address all or even any of the risks covered by the underlying policy. Differences may exist, depending upon the extent to which the underlying insurance covers intentional, as well as unintentional,

---

[22]No. 05-2192-JWL-DJW, 2006 WL 3715927, *1 (D. Kan. Dec. 12, 2006) (citation omitted).

[23]*Id.* (citations omitted).

misconduct.  The applicable reinsurance and the underlying liability policy may apply to different time periods.  They may vary in their applicability to some if not all of the underlying claims. Conceivably the reinsurer may invoke notice provisions that raise a conflict as to when its insured had relevant knowledge of the underlying claims and thus faced a duty to timely report them to the reinsurer.  Other substantial differences may exist between the relevant terms of the reinsurance and those of the underlying insurance.

In this instance the Court also agrees with FDIC-R that Plaintiff has provided nothing but a bare suggestion of any common legal interest between it and its reinsurer.  It has offered no evidence of any agreement with its reinsurer to pursue a common legal defense or strategy.  It has shown no agreement to share the costs of this litigation.  If indeed the two carriers share a common legal interest, Plaintiff might have joined the reinsurer as a party to this action, either as a co-plaintiff or as a defendant.  Plaintiff had no duty to do that.  But foregoing that possible procedure, without explanation, raises a negative inference that, notwithstanding their shared commercial or financial interests, they do not share a common legal interest.

For these reasons the Court finds that Plaintiff has not shown that it and its reinsurer share a common legal interest in addition to their shared commercial and financial interests.  The Court further finds that Plaintiff has, therefore, waived its claims of privilege and work-product protection with respect to the documents it has shared with its reinsurer.  Accordingly, it will grant the motion to compel production of the documents without redaction, as sought by Request No. 22.

In its motion FDIC-R also asks for leave to conduct a brief supplemental deposition of BancInsure's corporate representative, Jim Cross, for purposes of inquiring about the documents

to be produced.  Plaintiff has not addressed that request.  The Court finds it reasonable and will grant it.

### III.  CONCLUSION.

For the foregoing reasons the Court grants in part and denies in part FDIC-R's Motion to Compel (ECF 136).  It also grants Federal Deposit Insurance Corporation as Receiver of the Columbian Bank and Trust Company's Motion for Leave to Respond to BancInsure, Inc.'s Motion for Leave to File Supplemental Authority in Response to FDIC-R's Motion to Compel (ECF 189).  Within fifteen (15) days of the date of this Memorandum and Order Plaintiff BancInsure, Inc. shall produce for inspection and copying by Defendant Federal Deposit Insurance Corporation as Receiver the parts Plaintiff has redacted from the documents responsive to Request No. 22 of FDIC-R's Second Request for Production of Documents.  The Court also authorizes FDIC-R to conduct a brief supplemental deposition of BancInsure's corporate representative, Jim Cross, or if applicable any successor to his position, for the purpose of inquiring about the documents to be produced.  The supplemental deposition shall not exceed one hour of interrogation and testimony.  The Court otherwise denies the motion to compel.

**IT IS SO ORDERED.**

Dated this 24th day of October, 2013.


S/Gerald L. Rushfelt

Gerald L. Rushfelt
United States Magistrate Judge