**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| BANCINSURE, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION |
| v. ) | |
| ) | No. 12-2110-KHV |
| CARL L. MCCAFFREE, et al., ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

## **MEMORANDUM AND ORDER**

In this removed action, BancInsure, Inc. seeks a declaratory judgment that it owes no duty of coverage under a directors and officers insurance policy which it issued to the Columbian Bank and Trust Company and its directors and officers for claims which the Federal Deposit Insurance Corporation ("FDIC") asserted against former bank directors. Defendants in this case are former bank directors Carl L. McCaffree, Jimmy D. Helvey and Sam McCaffree ("individual defendants") and FDIC.[1] The individual defendants bring counterclaims for declaratory judgment. This matter is before the Court on the following cross-motions for summary judgment: (1) Plaintiff's Motion For Summary Judgment (Doc. #127) filed May 6, 2013; (2) Defendants Carl McCaffree's, Sam McCaffree's, And Jim Helvey's Motion For Summary Judgment (Doc. #147) filed June 10, 2013; and (3) the Motion For Summary Judgment Of Defendant Federal Deposit Insurance Corporation As Receiver Of The Columbian Bank And Trust Company (Doc. #151) filed June 10, 2013. For

---

[1] BancInsure also sued three other former bank directors, all of whom have settled with FDIC and have been dismissed from this suit and the underlying litigation.

While the case was pending in the District Court of Johnson County, Kansas, FDIC moved to intervene as a necessary party. The state court granted FDIC's motion and joined FDIC as a party defendant.

reasons set forth below, the Court finds that BancInsure's motion should be sustained and that the motions of the individual defendants and FDIC should be overruled.

## **Legal Standards**

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Vitkus v. Beatrice Co., 11 F.3d 1535, 1538-39 (10th Cir. 1993). A "genuine" factual dispute is one "on which the jury could reasonably find for the plaintiff," and requires more than a mere scintilla of evidence. Liberty Lobby, 477 U.S. at 252. A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." Id. at 248.

The moving party bears the initial burden of showing that there are no genuine issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Justice v. Crown Cork & Seal Co., 527 F.3d 1080, 1085 (10th Cir. 2008). Once the moving party meets this burden, the burden shifts to the nonmoving party to show that a genuine issue remains for trial with respect to the dispositive matters for which the nonmoving party carries the burden of proof. Nat'l Am. Ins. Co. v. Am. Re-Ins. Co., 358 F.3d 736, 739 (10th Cir. 2004); see Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). As to these matters, the nonmoving party may not rest on the pleadings but must set forth specific facts. Fed. R. Civ. P. 56(e)(2); Matsushita, 475 U.S. at 586-87; Justice, 527 F.3d at 1085. Conclusory allegations not supported by evidence are insufficient to establish a genuine issue of material fact. Jarvis v. Potter, 500 F.3d 1113, 1120 (10th Cir. 2007); see Kidd v. Taos Ski Valley, Inc., 88 F.3d 848, 853 (10th Cir. 1996).

When applying this standard, the Court must view the factual record in the light most favorable to the party opposing the motion for summary judgment. Duvall v. Ga.-Pac. Consumer Prods., L.P., 607 F.3d 1255, 1260 (10th Cir. 2010); see Ricci v. DeStefano, 557 U.S. 557, 586 (2009). Summary judgment may be granted if the nonmoving party's evidence is merely colorable or is not significantly probative. Liberty Lobby, 477 U.S. at 250-51. Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52.

**Facts**

The following facts are stipulated or uncontroverted:

BancInsure issued Directors and Officers Liability Insurance Policy No. 15DO00163-2 ("the Policy") to Columbian Bank and Trust Company effective May 11, 2007 to May 11, 2010, subject to an annual renewal process. On August 22, 2008, the Kansas State Bank Commissioner declared the bank insolvent and appointed FDIC as receiver. Three years later, FDIC filed suit in this Court against former Columbian officers and directors, including the individual defendants. FDIC v. McCaffree, Civil Action No. 11-2447-JAR/KGS (filed Aug. 9, 2011) ("the underlying D&O action"). In that case, FDIC alleged that defendants had breached their fiduciary duties and acted negligently in originating and/or approving risky commercial real estate loans from November of 2004 through May of 2008 and failing to properly supervise bank lending functions. FDIC claimed damages of $52 million.

Before FDIC had filed suit but after it asserted claims against the individual defendants and other bank officers and directors (collectively "the insured officers and directors"), the insured officers and directors requested coverage under the Policy. After agreeing to advance defense costs

under a reservation of rights, BancInsure filed this action against the insured officers and directors in the District Court of Johnson County, Kansas, seeking a declaration that the Policy provides no coverage for any claims that FDIC might assert against them.

By way of a settlement between BancInsure, the individual defendants and FDIC in February of 2013, the parties resolved the underlying D&O action. Specifically, the individual defendants agreed to confess judgment in favor of FDIC for $5 million (the amount of the Policy limits). The parties agree that the amount of the confessed judgment is reasonable in light of the FDIC claims and the likelihood of a jury verdict substantially in excess of policy limits if the case had proceeded to trial. To date, the individual defendants have paid $750,000 and BancInsure has paid $250,000 in partial satisfaction of the judgment.[2]

**The Policy**

The Policy is a claims-made policy in which BancInsure, in relevant part, agrees to pay "on behalf of the Insured Persons, Loss which the Insured Persons shall be legally obligated to pay." Policy § I.A. (Doc. #128-3). The individual defendants are "Insured Persons" under the Policy. Id. § IV.A-B, Decl. Item 1. The Policy contains a so-called "insured v. insured" exclusion which provides that "[t]he Insurer shall not be liable . . . for Loss in connection with any Claim made against the Insured Persons based upon, arising out of, relating to, in consequence of, or in any way involving . . . a Claim by, or on behalf, or at the behest of, any other Insured Person, the Company, or any successor, trustee, assignee or receiver of the Company." Id. § V.11. The Policy defines "the

---

[2] The Policy limits of $5 million have been reduced by the following: (1) payments on other claims, totaling $258,929.15; (2) attorney's fees/litigation expenses paid to the individual defendants in defense of the underlying D&O action, totaling $679,340.15; and (3) BancInsure's payment of $250,000 to FDIC in partial satisfaction of the judgment in the D&O action. The individual defendants have unpaid defense costs of $1,052,810.

-4-

Company" to include the bank. Id. § IV.A, Decl. Item 1.

The Policy also contains a regulatory exclusion which relieves BancInsure of liability for "any action . . . brought by or on behalf of any federal or state regulatory or supervisory agency or deposit insurance organization ("Agency"), . . . [including] any type of legal action which any such Agency may bring as receiver." Id. § V.12. The insureds purchased an endorsement to the Policy which negates that exclusion. Specifically, the endorsement stipulates that the Policy "is hereby amended by the deletion of the [Regulatory] Exclusion." Id. at Endorsement No. BI-DO-00316, Regulatory Exclusion Endorsement. The endorsement further provides as follows: "Nothing herein contained shall be held to vary, waive or extend any of the terms, conditions, provisions, agreements, or limitations of the above mentioned policy other than as above stated." Id.

**Events Following Bank Closing**

On July 15, 2008, FDIC and the Kansas Office of the State Bank Commissioner ("OSBC") jointly entered a cease and desist order to which the Bank consented. On Friday, August 22, 2008, OSBC closed the Bank and appointed FDIC as receiver. BancInsure learned of the closure no later than the following Monday. On September 2, 2008, BancInsure received from FDIC a letter dated August 28, 2008, which gave notice of potential claims that FDIC intended to file against Bank directors and officers. BancInsure received the same notice from the individual defendants.

The Bank holding company (Columbian Financial Corporation) and Carl McCaffree filed a declaratory judgment action against BancInsure on December 18, 2008, several months after the Bank closed but more than a year before FDIC filed the underlying D&O action. Columbian Fin. Corp. v. BancInsure, Inc., Case No. 08-cv-2642-CM (D. Kan.). Columbian and McCaffree sought a declaratory judgment that the Policy would cover a particular claim if they were to make it before

May 10, 2010, the end of the original policy period. BancInsure took the position that the Policy covered only claims made before August 22, 2008, when the Kansas State Bank Commissioner declared the Bank insolvent and appointed FDIC as receiver. Columbian and McCaffree brought the declaratory judgment action in response to a lawsuit filed by the Laborers Fund against a former Columbian officer for which BancInsure had denied coverage because it had not received notice during the policy period. During the course of the lawsuit, the parties stipulated that the Laborers Fund action was covered under the Policy and the parties filed cross-motions for summary judgment. See Columbian Fin. Corp. v. BancInsure, Inc., 650 F.3d 1372, 1373-75 (10th Cir. 2011).

The district court granted the motion for summary judgment of Columbian and McCaffree, ruling that the policy period continued until May 10, 2010. See id. at 1375. BancInsure appealed, arguing that the receivership effectively terminated the policy period. Although neither party raised the issue, the Tenth Circuit held that the district court lacked jurisdiction because the parties stipulated during the litigation that the Policy covered the Laborers Fund claim. The stipulation stripped the case of actual controversy, and the Tenth Circuit reversed and remanded with instructions that the district court vacate its judgment. Id. at 1381-85.

By letter dated May 5, 2010, FDIC demanded civil damages from Bank officers and directors for losses incurred as a result of their alleged wrongful acts. Counsel sent a copy of the letter to BancInsure and recommended that the officers and directors also report the claim to BancInsure. In April of 2011, BancInsure received a copy of the FDIC's draft complaint in the underlying D&O action. FDIC filed the complaint in this court on August 9, 2011 (Case No. 11-CV-2447 JAR/KGS).

As noted, BancInsure, FDIC and the individual defendants resolved the underlying D&O action by way settlement in February of 2013. The individual defendants confessed judgment in the

amount of $5 million entered February 26, 2013.

In this declaratory judgment action, BancInsure alleges that the individual defendants made misrepresentations which voided the Policy, gave it the right to rescind and would have caused it to cancel the Policy if the individual defendants had disclosed the true facts (Count I); that the individual defendants' failure to disclose material information voided the Policy, gave BancInsure the right to rescind and constituted a material breach of the contract (Count II); and that the Policy's "insured v. insured" exclusion excludes coverage (Count III). See Pretrial Order (Doc. #160) filed June 27, 2013 at 16 at 18-20.[3] The individual defendants filed a joint counterclaim alleging that they are entitled to a declaration that the Policy is valid and enforceable, i.e. that BancInsure has no right to rescind, cancel or terminate the Policy (Counts I through III) and that the FDIC claims are covered under the Policy (Counts IV and V). See id. at 20-21.

## **Analysis**

BancInsure seeks summary judgment, arguing that (1) the Policy is void and may be rescinded due to the individual defendants' fraudulent misrepresentation, (2) the Policy may be cancelled due to the individual defendants' material breach of contract and (3) the "insured v. insured" exclusion bars coverage of the FDIC claims against the individual defendants. FDIC responds that BancInsure has made judicial admissions which compel coverage, that the regulatory exclusion endorsement negates the "insured v. insured" exclusion, and that BancInsure has no viable rescission or breach of contract defense to coverage. FDIC also claims that the "insured v. insured"

---

[3] BancInsure asserted a fourth count based on having received inadequate notice of the claim but the parties have since stipulated that the individual defendants provided timely and adequate notice of FDIC's lawsuit. See Amended Petition For Declaratory Judgment (Doc. #9-2) filed March 8, 2012 at 21-22; Pretrial Order (Doc. #160) filed June 27, 2013 at 6.

exclusion is ambiguous and must be construed in favor of coverage.[4] In response to BancInsure's motion and in their own motion for summary judgment, the individual defendants assert that the policy is valid and enforceable and that the regulatory exclusion endorsement provides coverage for the FDIC claims.

## I.     "Insured v. Insured" Exclusion

Under the "insured v. insured" exclusion, BancInsure is not liable for loss in connection with any claim against the individual defendants that is "based upon, arising out of, relating to, in consequence of, or in any way involving . . . a Claim by, or on behalf, or at the behest of . . . any . . . receiver" of the Bank.[5] Although both FDIC and the individual defendants argue that this exclusion does not bar coverage, they admit that FDIC is the Bank's receiver. Accordingly, the underlying D&O action contains claims against the individual defendants by a Bank receiver.[6] On its face, the "insured v. insured" exclusion expressly defeats coverage of the FDIC claims in the underlying D&O action.

FDIC and the individual defendants claim that the "insured v. insured" exclusion does not bar coverage, however, because (1) under industry custom, practice and purpose, the exclusion does not apply; (2) the regulatory exclusion endorsement prevails over the "insured v. insured" exclusion;

---

[4] FDIC also seeks summary judgment, arguing the inverse of BancInsure's grounds, i.e. that (1) BancInsure is not entitled to rescission, (2) BancInsure is not excused from performance by the acts or omissions of the individual defendants and (3) the Policy provides coverage for the claims in the underlying D&O action.

[5] The exclusion includes three exceptions, none of which apply in this case: (1) a shareholder's derivative action; (2) wrongful termination of employment action; and (3) unlawful discrimination such as sexual or other forms of harassment. Policy § V.11. (Doc. #128-3).

[6] As a matter of law, FDIC succeeds to all of the rights, titles, powers and privileges of the Bank. See 12 U.S.C. § 1821(d)(2)(A)(I).

and (3) the exclusion is ambiguous. For reasons discussed below, these arguments are without merit.

### A. Purpose, Industry Custom and Practice

According to defendants, "insured v. insured" exclusions first appeared in insurance policies to preclude collusive lawsuits by one insured against another. They argue that because the FDIC suit against malfaisant officers and directors is not collusive, the Court should not apply the exclusion in this case.

The Court agrees that the underlying D&O action is not collusive, but that is not a basis for rejecting the exclusion as written. Defendants cite cases which discuss the exclusion's anti-collusive purpose, but those cases do not hold that the exclusion does not apply where its purpose is not served.[7] Moreover, the purpose is not even relevant. See Sphinx Int'l, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 412 F.3d 1224, 1229 (11th Cir. 2005) (collecting cases). This Court is bound to apply Kansas law, and to give the terms of an insurance policy their plain and ordinary meaning. Hartford Fire Ins. Co. v. Vita Craft Corp., 911 F. Supp. 2d 1164, 1176 (D. Kan. 2012). The historical purpose of the exclusion holds no sway. See Sphinx, 412 F.3d at 1229 (exclusion's rationale does not trump text).

In St. Paul Mercury Ins. Co. v. Miller, No. 2:12-CV-0225-RWS, 2013 WL 4482520 (N. D.

---

[7] W Holding Co., Inc. v. Chartis Ins. Co.-P.R., 904 F. Supp. 2d 169, 183-84 (D.P.R. 2012) (exclusion not applicable because FDIC not an organization under policy definition); Am. Cas. Co. of Reading, Pa. v. Sentry Fed. Sav. Bank, 867 F. Supp. 50, 59 (D. Mass. 1994) (RTC not in collusion with directors and officers); Slaughter v. Am. Cas. Co. of Reading, Pa., 842 F. Supp. 371, 374 (E.D. Ark. 1993) (exclusion not applicable because policy allowed RTC to bring action as creditor), rev'd, 37 F.3d 385 (8th Cir. 1994); Am. Cas. Co. of Reading, Pa. v. Baker, 758 F. Supp. 1340 (C.D. Cal. 1991) (noting that RTC/FDIC not in collusion with directors and officers). But see Fid. & Deposit Co. of Md. v. Zandstra, 756 F. Supp. 429, 433-34 (N.D. Cal. 1990) (although suit collusive at inception, not so when FDIC took over; alternative ground for holding that exclusion not applicable).

Ga. Aug. 19, 2013), the court summarily rejected defendants' argument that because the purpose of the "insured v. insured" exclusion is to prevent collusive suits, it should only apply in collusive suits. See 2013 WL 4482520, at *6. As that district court concluded under Georgia law, the Court should not refuse to give effect to unambiguous policy language based on assumptions as to why the language is included. See Am. Family Mut. Ins. Co. v. Wilkins, 285 Kan. 1054, 1059, 179 P.3d 1104, 1109 (2008) (if policy language unambiguous, court must enforce contract as made).[8]

### B. Regulatory Exclusion Endorsement

Defendants argue that the regulatory exclusion endorsement, which deletes the regulatory exclusion, would be rendered meaningless if the Court were to find that the "insured v. insured" exclusion applies. They contend that deletion of an exclusion by endorsement leads an insured to reasonably believe that a claim previously excluded under the deleted exclusion is covered. That may be true in some instances, but it does not negate the effect of other independent exclusions which have not been deleted.

BancInsure argues that the "insured v. insured" exclusion and the regulatory exclusion endorsement can coexist without causing one or the other to be ineffective. BancInsure asserts that the plain language of the endorsement instructs the reader not to apply it to any policy language other than the regulatory exclusion. See Policy at Endorsement No. BI-DO-00316 ("Nothing herein contained shall be held to vary, waive or extend any of the terms, conditions, provisions,

---

[8] FDIC also urges the Court to consider the historical context of the banking crisis of the late 1980s and early 1990s when several courts rejected "insured v. insured" exclusions where the policies did not specifically exclude coverage for actions by "receivers," thereby prompting insurers to add regulatory exclusions to their policies. FDIC argues that in light of this custom and practice, the Court should conclude that BancInsure intended to provide coverage in the underlying D&O action. The Court rejects this argument. The plain language of the policy excludes claims against insured persons by a Bank receiver, and FDIC's argument cannot trump the text of the Policy.

agreements, or limitations of the above mentioned policy other than as above stated."). BancInsure also notes that the endorsement permits coverage for FDIC claims of a regulatory nature, e.g., removal and prohibition orders, civil money penalties and cease and desist orders, see generally 12 U.S.C. § 1818, and claims by other regulatory agencies such as the Securities and Exchange Commission and the Equal Employment Opportunity Commission.

The Court agrees that the policy language allows the "insured v. insured" exclusion to bar coverage of the FDIC claims without rendering the regulatory exclusion endorsement meaningless. The "insured v. insured" exclusion specifically applies to claims brought by a receiver, and here, FDIC clearly asserted claims against the insured officers and directors in its capacity as receiver.[9] The regulatory exclusion endorsement extended the Policy to provide coverage for any number of regulatory actions by FDIC and other agencies. The endorsement applies exclusively to the regulatory exclusion and does not waive any other policy provision, including the "insured v. insured" exclusion.

The Court's conclusion is consistent with Davis v. BancInsure, Inc., No. 3:12-cv-113-TCB, 2013 WL 1223696 (N.D. Ga. March 20, 2013). Davis examined whether coverage existed under a BancInsure D&O policy for FDIC claims against the former officers and directors of a closed bank. The policy contained the same "insured v. insured" exclusion as that in this case. Deciding the issue as a matter of law, the district court concluded that the exclusion expressly barred coverage of a claim by FDIC. Davis, 2013 WL 1223696, at *8. In Davis, the directors and officers contended that even if the "insured v. insured" exclusion applied, the policy when read as a whole

---

[9] Defendants argue that FDIC is not a "typical" receiver, but their argument fails in the face of the common sense meaning of the word receiver and their admission that FDIC acted in that capacity.

provided coverage of regulatory claims. They too argued that the regulatory exclusion endorsement would be rendered meaningless if the FDIC claims were excluded from coverage. The endorsement is the same one that appears in the policy in this case. In sum, the Davis facts are identical in relevant part to those in this case.

The Davis case is well reasoned and the Court agrees with its analysis and conclusions. The combination of the "insured v. insured" exclusion and the regulatory exclusion endorsement does not mean that the latter negates or supercedes the former.[10] As the Davis court points out, the endorsement language specifically addresses its relationship to other exclusions by stating that "[n]othing herein contained shall be held to vary, waive or extend any of the terms, conditions, provisions, agreements, or limitations of the above mentioned policy other than as above stated." Id. at *10. Deleting one exclusion did not change the effect of any other exclusion or, specifically, the "insured v. insured" exclusion. The language is clear. The regulatory exclusion endorsement does not delete or supersede the "insured v. insured" exclusion.

### C. Ambiguity

Defendants also argue that the presence of both the "insured v. insured" exclusion and the regulatory exclusion endorsement create an ambiguity as to whether claims by FDIC as receiver are excluded.[11] BancInsure contends that no such ambiguity exists and therefore the Court need not

---

[10] Georgia and Kansas law are the same with respect to construing an endorsement. The Court is to read the endorsement and the policy together, leaving the policy in full force and effect except as altered by the words of the endorsement. The endorsement modifies the terms and conditions of the policy only to the extent specifically called for in the endorsement's explicit provisions. See, e.g., Thornburg v. Schweitzer, 44 Kan. App. 2d 611, 620, 240 P.3d 969, 976 (2011).

[11] Without elaboration, FDIC also argues that the Policy is ambiguous because it contains both a regulatory exclusion and a regulatory exclusion endorsement. The Bank purchased
(continued...)

resort to extrinsic evidence or rules of construction to determine the Policy meaning. For reasons set forth below, the Court agrees.

The interpretation of an insurance policy, like other contracts, is a question of law. AMCO Ins. Co. v. Beck, 261 Kan. 266, 269, 929 P.2d 162, 165 (1996). Courts give the terms in an insurance policy their plain and ordinary meaning unless the parties have expressed a contrary intent. Pink Cadillac Bar & Grill, Inc. v. U.S. Fid. & Guar. Co., 22 Kan. App. 2d 944, 948, 925 P.2d 452, 456 (1996). The test to determine whether an insurance contract is ambiguous is not what the insurer intends the language to mean, but what a reasonably prudent insured would understand the language to mean. Id. To be ambiguous, a contract must contain provisions or language of doubtful or conflicting meaning, as gleaned from a natural and reasonable interpretation of its language. Farm Bureau Mut. Ins. Co. v. Old Hickory Cas. Ins. Co., 248 Kan. 657, 659, 810 P.2d 283, 285 (1991). Where the terms of a policy of insurance are ambiguous or uncertain, conflicting or susceptible of more than one construction, the construction most favorable to the insured must prevail. Id. If the policy is not ambiguous, the Court must enforce it according to its terms. Am. Media, Inc. v. Home Indem. Co., 232 Kan. 737, 740, 658 P.2d 1015, 1019 (1983). While the insured has the burden to prove coverage under the policy, the insurance company has the duty to show that a specific provision of the policy excludes coverage. Shelter Mut. Ins. Co. v. Williams, 248 Kan. 17, 29-30, 804 P.2d 1374, 1383 (1991). Courts interpret exclusionary clauses narrowly against the drafter, in favor of coverage. Dillon Co. v. Royal Indem. Co., 369 F. Supp. 2d 1277, 1284 (D. Kan. 2005).

---

[11](...continued)
the endorsement to eliminate the exclusion, so the former cancels the latter. No ambiguity is present.

In Davis v. BancInsure, Inc., No. 3:12-cv-113-TCB, 2013 WL 1223696 (N.D. Ga. March 20, 2013), the court cited many of the cases the parties discuss in their briefs, reflecting the way in which courts are split on the issue of whether "insured v. insured" exclusions in D&O policies apply to claims by FDIC. The court notes that the majority view holds that coverage exists for FDIC claims even though it steps into the shoes of a failed bank. Id. at *8-9 (citations omitted). As Davis points out, however, the cases making up the majority view do not involve policies which expressly provide that the exclusion applies to receivers.[12] In contrast, the policy at issue in Davis and in this case specifically excludes coverage for claims by entities acting as successors, receivers, assignees and trustees. Citing the same "plain meaning" rule of construction which Kansas courts apply, Davis concluded that the exclusion's plain language unambiguously bars coverage for FDIC claims. 2013 WL 1223696, at *9. Not only does the "insured v. insured" provision exclude claims brought by or on behalf of the Bank against the individual defendants, but it also expressly excludes claims brought by or on behalf of receivers of the Bank.

In its concluding summary, the Davis court noted that the "insured v. insured" exclusion and the regulatory exclusion overlap when a regulatory agency brings an action as a receiver, but that removing the regulatory exclusion did not affect the application of the "insured v. insured" exclusion. A reasonable person in the position of the insured would understand that the "insured v. insured" exclusion means that claims by FDIC as receiver are excluded. Finding no inconsistency between the "insured v. insured" exclusion and the regulatory exclusion endorsement, the court

---

[12] "The doctrines often used to justify a finding of coverage when receivers sue directors and officers of a failed bank relate to ambiguities in the insurance contract, the insured's reasonable expectations of coverage, and the unconscionability of a finding of no coverage." Davis, 2013 WL 1223696, at *9 (quoting Melanie K. Palmore, "Insured v. Insured" Exclusions in Director and Officer Liability Insurance Policies: Is Coverage Available When Chapter 11 Trustees and Debtors-in-Possession Sue Former Directors and Officers, 9 Bankr. Dev. J. 101, 114 (1992)).

-14-

enforced the contract as written. 2013 WL 1223696, at *12. This ultimate passage recites the same principles governing the construction of insurance policies as Kansas law applies: (1) the test to determine whether an insurance contract is ambiguous is not what an insurer intends the language to mean, but what a reasonably prudent insured would understand it to mean; and (2) if an insurance policy's language is unambiguous, courts must enforce the contract as made. See, e.g., Hartford Fire Ins. Co. v. Vita Craft Corp., 911 F. Supp. 2d 1164, 1176 (D. Kan. 2012) (internal citations omitted).

St. Paul Mercury Ins. Co. v. Miller, No. 2:12-CV-0225-RWS, 2013 WL 4482520 (N. D. Ga. Aug. 19, 2013), is in accord. There, the court held that the "insured v. insured" provision in a D&O insurance policy barred coverage of an FDIC suit against former bank employees.[13] The exclusion barred coverage for claims "brought or maintained by or on behalf of any Insured or Company in any capacity." 2013 WL 4482520, at *4. Because FDIC steps into the shoes of a failed financial institution, the court held that if the policy barred coverage for suit by the bank, it would likewise bar coverage for suit by FDIC. Id. at *4-5. The court appropriately focused on the language of the exclusion rather than on a supposed majority or minority rule. Id. at *5 (citing Davis, 2013 WL 1223696, at *8-9).[14]

---

[13] The insurance policy at issue in the St. Paul Mercury case does not include a regulatory exclusion endorsement and is similar only insofar as it discusses an "insured v. insured" exclusion. The exclusion was not nearly so specific as the one in this case in identifying the capacity of those whose claims are barred (i.e. "any successor, trustee, assignee or receiver of the Company").

[14] Other courts agree that claims by FDIC or other financial regulatory entities are barred by "insured v. insured" exclusions in various D&O policies. See Hyde v. Fid. & Dep. Co. of Md., 23 F. Supp. 2d 630, 633-34 (D. Md. 1998) (RTC claims brought as bank receiver against directors and officers barred by exclusion because RTC stands in bank's shoes); Gary v. Am. Cas. Co. of Reading, Pa., 753 F. Supp. 1547, 1554-55 (W.D. Okla. 1990) (FDIC claims against bank directors barred by exclusion because FDIC seeks recovery for injury to bank); see also Powell v. Am. Cas. Co. of Reading, Pa., 772 F. Supp. 1188, 1191 (W.D. Okla. 1991) (FDIC claim barred by
(continued...)

The Court concludes as a matter of law that the policy is not ambiguous, and must therefore be enforced as written.

**D.     Conclusion**

In summary, the Court holds that the "insured v. insured" provision is not ambiguous, it is not negated by the regulatory exclusion endorsement and it bars coverage of the FDIC claims in the underlying D&O action.[15]

**II.    Other Arguments**

FDIC raises an independent argument in favor of coverage, asserting that in the 2008 declaratory judgment action that Columbian Financial Corporation and Carl McCaffree brought against BancInsure, BancInsure admitted that the Policy applies to the claims in the underlying D&O action. Columbian Fin. Corp. v. BancInsure, Inc., Case No. 08-cv-2642-CM (D. Kan. filed Dec. 10, 2008) ("the Columbian case").[16] FDIC argues that this Court should effectuate the binding nature

---

[14](...continued)
exclusion); Mt. Hawley Ins. Co. v. FSLIC, 695 F. Supp. 469, 481-83 (C.D. Cal. 1987) (exclusion bars FSLIC claim against directors and officers); Am. Cas. Co. of Reading, PA v. FDIC, 677 F. Supp. 600, 604 (N.D. Iowa 1987) (exclusion not ambiguous).

The Court is aware of contrary authority. See Memorandum In Support Of The Federal Deposit Insurance Corporation As Receiver Of The Columbian Bank And Trust Company's Motion For Summary Judgment And In Opposition To Plaintiff's Motion For Summary Judgment (Doc. #152-1) at 70-71 (listing cases). As already noted, however, the determining factor for most of those decisions was the absence of policy language which specifically stated that the exclusion applied to successors, trustees, assignees or receivers. Such cases are therefore inapposite.

[15]     Because the Court concludes that the Policy language bars coverage for the FDIC claims in the underlying D&O action, it need not consider BancInsure's alternative theories that the individual defendants caused rescission of the Policy or a material breach such that BancInsure had the right to cancel the Policy.

[16]     FDIC points to the following BancInsure answer to an interrogatory from Columbian Bank and Trust in the Columbian case:

(continued...)

-16-

of the admission by declaring that BancInsure must indemnify the individual defendants. In essence, FDIC claims that BancInsure must be estopped from denying coverage in this case. The Court rejects FDIC's argument.[17]

Judicial estoppel is an equitable doctrine that prohibits a party from deliberately changing positions to suit its needs. Eastman v. Union Pac. R.R., 493 F.3d 1151, 1156 (10th Cir. 2007). Generally, courts consider the following three factors to determine whether judicial estoppel should apply: (1) whether the party's later position was clearly inconsistent with its earlier position; (2) whether the party succeeded in persuading a court to accept the party's earlier position so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that one of the courts was misled; and (3) whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party. Johnson v. Lindon City Corp., 405 F.3d 1065, 1069 (10th Cir. 2005). These factors are neither exhaustive nor exclusive, as matters in equity require a court to consider all of the equities of a particular case. See New Hampshire v. Maine, 532 U.S. 742, 750-51 (2001). Finally, judicial estoppel should be applied narrowly and cautiously. Hansen v. Harper Excavating, Inc., 641 F.3d 1216, 1227 (10th Cir. 2011).

---

[16](...continued)
Interrogatory 4.    Is coverage currently available under the Policy for any claims brought against Insured Persons by a deposit insurance organization acting as a receiver of Columbian Bank and Trust Company? Please state all facts and identify all documents which support your response.

**RESPONSE**:    Yes, provided notice of a potential claim was provided to BancInsure within thirty (30) days following the end of the **Policy Period**. See answer to Interrogatory no. 3, above.

See Defendant's Responses To Plaintiffs' Opening Interrogatories (Doc. #152-6) at 3.

[17]    Moreover, the interpretation of an insurance policy is a question of law for the Court to decide. AMCO Ins. Co. v. Beck, 261 Kan. 266, 269, 929 P.2d 162, 165 (1996).

Turning to the first factor, BancInsure's denial of liability in this case may appear superficially inconsistent with its interrogatory answer in the Columbian case. Because judicial estoppel is an equitable doctrine, however, the Court considers the context of the interrogatory. The Columbian case contained no issue with respect to the underlying D&O action, the "insured v. insured" exclusion or the regulatory exclusion endorsement. It was a declaratory judgment action seeking a determination as to when coverage ended under a claims-made policy and whether Columbian had the right to purchase extended coverage after a receivership. FDIC was not a party to the case nor was its future claim involved.

Second, the interrogatory answer had no bearing on the resolution of the Columbian case and the district court in no way relied on the information in the interrogatory answer. The Columbian case was decided on summary judgment and vacated on appeal by the Tenth Circuit before either the underlying D&O action or the present case existed. The Tenth Circuit vacated the judgment because the parties stipulated that coverage existed for the Laborers Fund claim, thereby removing any case or controversy and concomitantly stripping the district court of jurisdiction. See Columbian Fin. Corp. v. BancInsure, Inc., 650 F.3d 1372, 1373 (10th Cir. 2011) ("Only one claim had been made for which the Policy might provide coverage, and during the litigation BancInsure had stipulated that the Policy covered the claim.") (explaining lack of actual controversy and describing Laborers Fund claim).

Third, FDIC suffers no unfair detriment if BancInsure is allowed to deny coverage in this case. FDIC was not a party to the Columbian case and could not have relied to its detriment on BancInsure's interrogatory answer in that case. Neither does BancInsure obtain an unfair advantage,

-18-

as the Columbian case (filed four years earlier) had nothing to do with the FDIC claims.[18] The interrogatory answer that BancInsure gave in 2009 in unrelated litigation with different parties will not estop BancInsure from denying coverage for the underlying D&O action or serve as an admission of the ultimate issue in this case.

Finally, FDIC argues that BancInsure has made other representations and statements that it would provide coverage for the underlying D&O action. This argument also fails; the Court interprets the Policy as a matter of law. When a policy is not ambiguous, as this one is not, the Court enforces it according to its terms and will not consider extraneous evidence. See Mears v. Hartford Fire Ins. Co., 8 Kan. App. 2d 760, 762, 667 P.2d 902, 905 (1983).

**IT IS THEREFORE ORDERED** that Plaintiff's Motion For Summary Judgment (Doc. #127) filed May 6, 2013 be and hereby is **SUSTAINED.** Plaintiff is entitled to judgment on plaintiff's amended petition and against Carl McCaffree, Sam McCaffree and Jim Helvey on their first amended counterclaims. No claims remain in the case.

**IT IS FURTHER ORDERED** and the Court hereby declares that coverage for the FDIC claims in the underlying D&O action is excluded from the Policy**.**

**IT IS FURTHER ORDERED** that Defendants Carl McCaffree's, Sam McCaffree's, And Jim Helvey's Motion For Summary Judgment (Doc. #147) and Motion For Summary Judgment Of Defendant Federal Deposit Insurance Corporation As Receiver Of The Columbian Bank And Trust Company (Doc. #151) both filed June 10, 2013 be and hereby are **OVERRULED**.

Dated this 27th day of February, 2014, at Kansas City, Kansas.

---

[18] The Court is aware that BancInsure received from FDIC a letter dated August 28, 2008, which set forth potential claims against the directors and officers. This letter did not rise to the level of a claim, however, according to the quoted Tenth Circuit language in the text.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge